**In re ARNOL & MILDRED SHAFER FARMS, INC., Debtor.**

**ARNOL & MILDRED SHAFER FARMS, INC., Plaintiff,**

v.

**ITT FINANCIAL SERVICES—COMMERCIAL DIVISION d/b/a Thorp Credit, Peru Trust Company and United States of America Through the Peru Production Credit Association and United States of America Through the Farmers Home Administration, Defendants.**

**Bankruptcy No. 86–30551.**
**Adv. No. 87–3003.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

July 13, 1989.

Clifford D. Johnson, Asst. U.S. Atty., South Bend, Ind., for Farmers Home Admin.

Jeffry G. Price, Peru, Ind., and Joseph D. Bradley, South Bend, Ind., for Peru Trust Co.

Charles H. Criss, Peru, Ind., and Virginia M. Bartelt, Madison, Wis., for Aetna Finance Co., d/b/a ITT Financial Services–Commercial Div.

## ORDER

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge.

On January 7, 1987, Arnol & Mildred Shafer Farms, Inc. ("Shafer, Inc."), the debtor-in-possession, filed its Complaint to Determine Nature, Extent and Priority of Liens on certain real property which is the sole asset of Shafer, Inc.[1] Shafer, Inc., and the defendants, Aetna Finance Company, d/b/a ITT Financial Services—Commercial Division, d/b/a Thorp Credit ("Aetna"); Peru Trust Company ("Peru Trust"), and United States of America through the Farmers Home Administration ("FmHA"), filed their joint stipulation of facts on September 28, 1987, and thereafter submitted briefs to the court in support of their respective positions. United States of America through Peru Production Credit Association ("PCA") failed to appear in this proceeding. The court took the matter under advisement on November 19, 1987.

### Background

The stipulation of facts filed by Shafer, Inc., Aetna, Peru Trust and FmHA reads as follows:

1. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. Section 157 and 28 U.S.C. Section 1334 and this Complaint is appropriately brought pursuant to Bankruptcy Rule 7001.

2. Shafer, Inc. initiated its Petition for Reorganization on May 10, 1986, and has remained as a Debtor-in-Possession since that date.

David R. Krebs, Indianapolis, Ind., for plaintiff.

---

1. Shafer, Inc., filed its amended complaint on September 9, 1987.

3. The major asset of the bankruptcy estate of Shafer, Inc. consists of real estate of approximately 370 acres (hereinafter "Premises").

4. Peru Trust, FmHA, Aetna, and United States of America through Peru Production credit (sic) Associaton (sic) each assert an interest in the Premises by virtue of their respective mortgages.

5. On January 7, 1987, Shafer, Inc. initiated its Complaint to Determine the Nature, Extent and Priority of Liens against the above-named Defendants.

6. As to the mortage (sic) of Peru Trust, the parties stipulate as follows:

a. The mortage (sic) of Peru Trust, a copy of which is attached to its Answer and Cross–Claim, is a valid and properly perfected mortgage;

b. The mortgage of Peru Trust constitutes a first mortgage on a portion of the Premises consisting of approximately 32.48 acres as is more specifically set forth in the Answer and Cross–Claim of Peru Trust;

c. The mortgage of Peru Trust secures an indebtedness as of April 15, 1987, in the principal amount of $4,792.10 together with interest at the rate of $1.15 per day thereafter until paid in full and attorney fees and legal expenses of $885.00.

7. As to the mortgage of FmHA, the parties stipulate as follows:

a. The mortgage of FmHA, a copy of which is attached to its Answer, is not disputed as to its authenticity and genuiness (sic):

b. The mortgage of FmHA secures an indebtedness of shafer, Inc. (sic) as of February 13, 1987 in the princpal (sic) amount of $398,192.85 together with accrued interest of $244,847.42 with interest accruing thereafter at the rate of $120.0033 per diem; and

c. The validity of the mortgage of FmHA is at issue by virtue of alleged defects as to form and execution so as to fail to meet the requirements of Indiana law.

8. As to the mortgage of Aetna, the parties stipulate as follows:

a. Aetna's mortgage, a copy of which is attached to its Answer, constitutes a valid mortgage against the Premises; and

b. The mortgage of Aetna secures an outstanding debt as of May 23, 1985, in the amount of $393,104.43 plus interest at the post-maturity rate of 24% per annum and additional charges pursuant to the terms of the note.

9. As to the mortgage of United States of America through the Peru Production Credit Association, the parties stipulate as follows:

a. The PCA has wholly failed to appear, answer or otherwise respond so as to assert any mortgage, lien, or other interest in the Premises.

10. The issue before this Court to be decided on the above stipulations is as follows: Is the mortgage of FmHA invalid by virtue of the alleged defects in form and execution?

Stipulation of Facts (September 28, 1987).

In its Complaint to Determine Nature, Extent and Priority of Liens and its brief in support of the complaint Shafer, Inc., argues that the mortgage of FmHA is invalid pursuant to Indiana law by virtue of three defects in its form and execution. First, Shafer, Inc., asserts that the mortgage incorrectly identifies the mortgagor as "Arnol and Mildred Shafer Livestock Farms, Inc.," rather than "Arnol and Mildred Shafer Farms, Inc." Shafer, Inc., claims that the addition of the word "livestock" to the corporate name destroys the validity of the mortgage. Shafer, Inc., further contends that the mortgage is invalid because Arnol Shafer and Mildred Shafer executed the instrument in their individual, rather than corporate, capacities. Specifically, the Shafers signed the mortgage with the respective titles of "Pres." and "Treas." by their names. Below the signatures their typewritten names appear. Shafer, Inc., asserts that the handwritten designations of "Pres." and "Treas." are insufficient to indicate that the Shafers signed the mortgage in their capacity as officers of Shafer, Inc., and thus concludes that inasmuch as

individuals may not pledge corporate assets, the mortgage is not valid.

Finally, Shafer, Inc., submits that the mortgage is invalid due to the defective acknowledgment of the notary public. The acknowledgment states:

> Before me, Linda Thibos, Notary Public, this 14th day of November, 1980, Arnol Shafer and Mildred Shafer, husband and wife[,] acknowledged the execution of the annexed mortgage.

Invoking the requirements of Ind.Code § 32-1-2-15 which provides that a mortgage must be acknowledged by the grantor, Shafer, Inc., argues that because the acknowledgment refers to the Shafers as husband and wife, rather than as officers of the corporation, the mortgage fails to comply with Indiana law. Shafer, Inc., submits that since the requirements of a mortgage are clearly set forth by statute, the court must strictly construe those requirements in determining whether FmHA's mortgage is valid. Shafer, Inc., admits that case law on the subject is scarce due to the clear statutory provisions but cites the court to *Haverell Distributors, Inc. v. Haverell Mfg. Corp.*, 115 Ind. App. 501, 58 N.E.2d 372 (1944), as support for its position. Shafer, Inc., asserts that the mortgage of FmHA is invalid and of no force and effect and that Peru Trust and Aetna, respectively, hold first and second mortgages on the property. Shafer, Inc., further contends that as PCA failed to respond to the complaint its mortgage is invalid as well.

Aetna agrees with Shafer, Inc., in asserting that Shafer, Inc., as a debtor-in-possession with the rights of a trustee, may avoid FmHA's mortgage due to the defects contained therein. Aetna notes that as a debtor-in-possession Shafer, Inc., is not deemed to have actual notice of the defective mortgage and therefore may avoid the mortgage just as a bona fide purchaser could absent constructive notice. Aetna further agrees that its mortgage is second in priority to that of Peru Trust.

FmHA in turn asserts that use of the word "livestock" in the corporate name of the grantor does not invalidate the mortgage absent some showing of detrimental reliance on the error. FmHA asserts that the addition of the word "livestock" in Shafer, Inc.'s corporate name is a mere technical variance which does not defeat the validity of the mortgage. FmHA further states that its mortgage complies with Ind.Code § 32-1-2-15 because it is dated and sealed as well as signed and acknowledged by Shafer, Inc., through its officers. Specifically, FmHA argues that Ind.Code § 32-1-2-15 simply requires a mortgage to be "duly signed" and does not explain what is an appropriate signature. FmHA cites *Bickhart v. Henry*, 67 Ind.App. 493, 116 N.E. 15 (1917), in arguing that the name of a corporate officer along with his official title is sufficient to meet the requirements of § 32-1-2-15. In addition, FmHA notes that Ind.Code § 36-2-11-16(c)(1) requires only that the name of the person executing an instrument be typewritten beneath the signature; the section does not require their office or title to be typed. FmHA contends that Shafer, Inc., and Aetna's arguments to the contrary are without merit.

FmHA further submits that the acknowledgment in the mortgage meets the requirements of Ind.Code § 36-2-11-16(c)(4) that the name of a person who executes an instrument must appear "identically in the body of the instrument, in the acknowledgment ..., in his signature, and beneath his signature...." Ind.Code Ann. § 36-2-11-16(c)(4) (Burns 1988 Supp.). FmHA submits that the name of the corporate grantor in the body can never be the same as the names of the signing officers. In the alternative, however, even if the difference between the corporate officers' names or the officers' signatures and their designation as "husband and wife" in the acknowledgment are variations from the requirements of the statute, FmHA contends the errors will not invalidate the mortgage due to liberal construction of acknowledgments in Indiana. FmHA cites *Haverell*, 58 N.E.2d at 374 and *Bryant v. Richardson*, 126 Ind. 145, 25 N.E. 807, 810 (1890), in support of this position.

In addition, FmHA reminds the court that under Indiana law if an instrument

has been duly recorded, it is presumed to comply with the requirements of Ind.Code § 36–2–11–16 pursuant to Ind.Code § 36–2–11–16(e). FmHA contends that since the mortgage was property recorded as required by Indiana law, it is constructive notice to all who subsequently file mortgages against the same property. FmHA thus argues that its mortgage is not invalid and that it is second in priority among the mortgages in controversy herein.

### Discussion and Decision

Upon consideration of all the pleadings and briefs submitted in this proceeding the court adopts Stipulation Nos. 1–9 as its findings of fact. The court also determines as a matter of law that it has jurisdiction over Shafer, Inc.'s complaint pursuant to 28 U.S.C. §§ 157 and 1334, and that Shafer, Inc's complaint is properly brought as an adversary proceeding under Bankruptcy Rule 7001. The remaining legal issue before the court is whether the mortgage of FmHA is invalid by virtue of defects in its form, execution, and acknowledgment.

11 U.S.C. § 544, also called "the strong arm clause," permits a trustee or debtor-in-possession to stand in the shoes of "a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected ... whether or not such a purchaser exists...." 11 U.S.C. § 544(a)(3) (West 1988). In Indiana a bona fide purchaser is one who buys in good faith for value and without notice of prior interests in the property. *In re Herr*, 79 B.R. 793, 798 (Bankr.N.D.Ind.1987) (citing 25 Indiana Law Encyclopedia, *Sales of Realty*, § 102 at 341). Pursuant to § 544 a trustee or debtor-in-possession cannot be deemed to have actual notice. *Id.* (citing *Sandy Ridge Oil Co., Inc. v. Centerre Bank National Association (In re Sandy Ridge Oil Co., Inc.)*, 807 F.2d 1332, 1335–36 (7th Cir.1986)). Rather, a creditor seeking to counter the trustee or debtor-in-possession's efforts to avoid an obligation must be able to show that the trustee or debtor-in-possession had constructive notice of the obligation as determined by applicable state law in order to prevail. 79 B.R. at 798. *See also In re Sandy Ridge Oil Co., Inc.,* 807 F.2d at 1335–37.

Pursuant to Indiana law a mortgage which is properly acknowledged and recorded is constructive notice to subsequent purchasers of its existence. *C. Callahan Co. v. Lafayette Consumers Co.,* 102 Ind. App. 319, 2 N.E.2d 994 (1936). On the other hand, courts have held that the recording of an instrument which was not entitled to be recorded gives no constructive notice. *Starz v. Kirsch,* 78 Ind.App. 431, 136 N.E. 36 (1922). Constructive notice may be implied where a proper examination of the record would have led a reasonable man to the conclusion that the property to be mortgaged was subject to a prior conveyance or encumbrance. 20 Ind.Law Encyclopedia *Mortgages* § 108 at 96 (West 1959). The parties in this case agree that FmHA's mortgage was duly recorded. They disagree, though, as to whether certain defects in form, execution, and acknowledgment of the mortgage remove the mortgage from the constructive notice protections of Indiana law. The question for the court accordingly is whether a proper examination of the record would have put a good faith purchaser on notice that Shafer, Inc., had duly executed the mortgage in favor of FmHA. The court will consider the parties' arguments in light of the relevant provisions of the law.

### 1. Form of the mortgage

The debtor first argues pursuant to Indiana Code § 32–1–2–15 that the mortgage does not include the actual name of the debtor and accordingly is invalid with respect to the debtor-in-possession. The mortgage, which consists of a form printed by the FmHA with blanks typed in, states: "THIS MORTGAGE is made and entered into by Arnol and Mildred Shafer Livestock Farms, Inc....." Shafer, Inc., asserts that inasmuch as the correct name of the debtor is "Arnol and Mildred Shafer Farms, Inc.," the court should permit it to avoid the mortgage pursuant to § 544. Considering

this defect alone, the court is not convinced it should allow the debtor to avoid the interest. First, the court notes that the mortgage was duly recorded in the Recorder's Office of Miami County on November 14, 1980, the same day on which it was executed. Thus, if a bona fide purchaser were to have examined the records in Miami County on May 10, 1986, the date Shafer, Inc., filed its petition, looking for the name "Arnol & Mildred Shafer Livestock Farms, Inc." it would have found the mortgage. The court must determine, however, whether a good faith purchaser looking for the name "Arnol & Mildred Shafer Farms, Inc.," which was the accurate name of the debtor, would have found the document. Due to the relative similarity of the names, the court concludes a search by a subsequent bona fide purchaser would have revealed the mortgage in the name of Arnol & Mildred Shafer Livestock Farms, Inc.

As the Indiana Supreme Court noted in *In re Sandy Ridge Oil Co., Inc.,* 510 N.E.2d 667, 670 (Ind.1987), in discussing a different recording defect, "[t]he rule that a recorded defective instrument does not afford constructive notice has long been questioned." *See* Glenn, *Mortgages of Land* § 385 at 1571, 1573 (1943) (which states in part: "If, then, a deed cannot bind absolutely because of improper execution or acknowledgment, may a title searcher pass it by, and may the person for whom he acts say, after purchasing, 'I had no warning of that deed whatsoever'? ....."). Reviewing the omission before it, i.e., that of failing to include the preparer's name in the instrument, the court concluded that as the omission would not have been fatal to a conveyance or encumberance, the error did not invalidate the instrument.

Admittedly, the omissions in controversy in this case present a much closer question. The court is not convinced, however, that a subsequent purchaser or title searcher would have missed the mortgage as recorded even though it contains a slight variation in the corporate name. Importantly, the variation in the corporate designation used in the mortgage does not differ from the actual corporate name until the fifth word in the name. Hence, the different

titles would have been filed quite close together, if not next to each other, in the recorder's records. The court believes that the mere coincidence of having two corporate names so similar is so unlikely as to require the good faith purchaser to investigate further to determine whether the corporations are actually one and the same. The court accordingly finds that this variation in the form of the mortgage is insufficient to nullify the constructive notice gained by recording the mortgage or to render the mortgage invalid as to Shafer, Inc.

### 2. Execution of the Mortgage

The next question before the court is whether certain errors in execution of the FmHA mortgage defeat the constructive notice provided by proper recording of the instrument. The mortgage is signed by Arnol Shafer and Mildred Shafer. Next to the Shafers' handwritten signatures, the designations "Pres." and "Treas.," respectively, appear in handwriting. The Shafers' names are typed just below their handwritten signatures. Shafer, Inc., argues that had the Shafers intended to sign the mortgage on behalf of the corporation, the proper corporate name should have appeared by their signatures. For instance, the commonly accepted form used when corporate officers execute a document on behalf of a corporation is, "Corporation, by _____, its _____." This form, however, while entirely appropriate and correct, is not the exclusive form which parties may use when executing a document on behalf of a corporation. *Bickhart v. Henry,* 67 Ind.App. 493, 116 N.E. 15, 16 (1917).

Noting that a corporation can act only through its officers or some other agent or authorized person, the *Bickhart* court held that the execution of a deed by the corporate officer with the designation of his office listed was sufficient to show that the officer signed the document on behalf of the corporation when the other provisions of the deed supported this conclusion. Specifically, the *Bickhart* court found that the body of the deed, its attestation, and the

corporate seal on the deed confirmed the validity of the deed notwithstanding the technical error of omitting the corporate name above the corporate officers' signature. In making its decision, the *Bickhart* court relied upon *City of Fond Du Lac v. Otto's Estate*, 113 Wis. 39, 88 N.W. 917 (1902), wherein the court stated:

> "[I]t is now well settled that, where it appears in the body of the instrument that the corporation is the grantor or obligor, then the instrument is well executed by the corporation if signed simply with the signature of the proper officer or officers, with his or their official title or titles."

116 N.E. at 16.

Once again, the court finds the question presented in this proceeding to be somewhat more difficult to resolve than that addressed by the *Bickhart* court. In *Bickhart* the failure to include the corporate name by the officer's signature was the only error in the instrument in controversy. The court accordingly could look to the rest of the document which was in proper form and order and confidently state that the instrument unambiguously revealed that the officer signed on behalf of the corporation. The court cannot be so confident in this case due to other errors within the mortgage which create confusion in the court's mind and no doubt would be confusing to a subsequent bona fide purchaser who might be examining the document. Therefore, without concluding whether this defect in execution alone would invalidate the FmHA mortgage, the court moves on to consider what may be the most serious flaw in the instrument.

### 3. Acknowledgment of the mortgage

Ind.Code § 32–1–2–18 states that: "To entitle any conveyance, mortgage or instrument of writing to be recorded, it shall be acknowledged by the grantor...." Ind.Code Ann. § 32–1–2–18 (Burns 1980). Pursuant to Ind.Code § 32–1–2–30 the "grantor" includes "every person by whom any estate or interest in lands is created, granted, bargained, sold, conveyed, transferred or assigned." Ind.Code Ann. § 32–1–2–30 (Burns Supp.1988). An instrument which is recorded without a proper acknowledgment does not give constructive notice to any one. *Haverell Distributors v. Haverell Mfg. Corp.*, 115 Ind.App. 501, 58 N.E.2d 372, 374 (1944) (citing *Sinclair v. Gunzenhauser*, 179 Ind. 78, 98 N.E. 37 (1912); *Bledsoe v. Ross*, 59 Ind.App. 609, 109 N.E. 53 (1915); *Starz v. Kirsch*, 78 Ind.App. 431, 136 N.E. 36 (1922); and *Kothe v. Krag–Reynolds Co.*, 20 Ind.App. 293, 50 N.E. 594 (1898)). Generally, however, inasmuch as the purpose of acknowledgments is to entitle an instrument to be recorded, a mere informality or omission in the acknowledgment will not render the instrument ineffective. *Bryant v. Richardson*, 126 Ind. 145, 25 N.E. 807, 810 (1890) (citing *Brown v. Corbin*, 121 Ind. 455, 23 N.E. 276 (1890)).

The proper form of an acknowledgment is prescribed by Ind.Code § 32–1–2–23 which states:

> The following or any other form substantially the same, shall be a good or sufficient form of acknowledgment of any deed or mortgage:
>
> "Before me, E.F. [judge or justice, as the case may be][2] this ..... day of ........, A.B. acknowledged the execution of the annexed deed, [or mortgage, as the case may be.]"

Ind.Code Ann. § 32–1–2–23 (Burns 1980). The statute does not set forth the appropriate form of a corporate acknowledgment. Courts thus tend to construe corporate acknowledgments somewhat liberally. *Haverell*, 58 N.E.2d at 374. *See also Lenhart v. Grace Const. & Supply Co.*, 120 Ind.App. 41, 89 N.E.2d 627, 629 (1950). In determining whether a certificate of acknowledgment is valid a court may look to the instrument itself and may uphold the certificate, where the person executing the instrument clearly intended to acknowledge for the corporation. 89 N.E.2d at 629 (cit-

---

**2.** In addition to a judge or justice as indicated in the statute, a notary public and certain other officials may witness an acknowledgment. Ind.

Code Ann. § 32–1–2–23 (Burns 1980) compiler's note.

ing several sources including 1 Am.Jur. *Acknowledgments* § 79 at 347; 1 C.J.S. *Acknowledgments* § 91d at 854; 29 A.L.R. 934; 7 Thompson on Real Property § 4049 at 485).

In *Haverell*, the Indiana Court of Appeals examined a defective acknowledgment in a chattel mortgage wherein two corporations and an individual purported to mortgage certain personal property to another individual. The certificate of acknowledgment to the mortgage referred only to the individual mortgagor. Reviewing the instrument, the court determined that "[s]ince the certificate, read in connection with the instrument, does not identify the acknowledgor with the mortgagor Haverell Manufacturing Corporation, in an official or a representative capacity, or otherwise, we must hold it insufficient to evidence acknowledgment by that corporate entity." 58 N.E.2d at 375.

In this case the certificate of acknowledgment subject to the criticism of Shafer, Inc., states that "Arnol Shafer and Mildred Shafer, husband and wife[,] acknowledged the execution of the annexed mortgage." Clearly, nothing in the acknowledgment links the Shafers to their corporation, Shafer, Inc., which purportedly is the grantor of the mortgage. The acknowledgment instead refers to the Shafers as husband and wife thereby indicating, albeit perhaps inadvertently, that the Shafers executed the mortgage as husband and wife or as tenants by the entireties. The court believes this error, considered in conjunction with the other errors in the mortgage, is the fatal blow to the mortgage insofar as Shafer, Inc., is concerned. Indeed, had the acknowledgment been correct, it might well have served to clear up the confusion caused by other errors in the mortgage. For instance, if the acknowledgment had listed the correct name of Shafer, Inc., and indicated that Arnol Shafer and Mildred Shafer acknowledged their execution of the mortgage as corporate

officers on Shafer, Inc.'s behalf, any doubts concerning the identity of the true grantor of the mortgage would have been removed. In this case, though, the acknowledgment itself is open to serious criticism. Considering the defects in the form and execution of the mortgage itself combined with the problems in the acknowledgment, the court is not convinced that a bona fide purchaser of the property would have had the duty to inquire further as to the validity of the mortgage to FmHA. The court accordingly concludes that the flaws in the mortgage and acknowledgment remove the mortgage from the constructive notice protections of Indiana law provided by proper recording of the instrument and render it ineffective as to Shafer, Inc.[3]

### Conclusion

WHEREFORE, the court grants Shafer, Inc.'s Complaint and determines that Peru Trust and Aetna hold first and second liens, respectively, on the real estate in controversy. The court finds FmHA's mortgage to be invalid as to Shafer, Inc., due to the defects in its form, execution, and acknowledgment. The court further finds that as the PCA and its counsel received the Summons and Notice of Pre–Trial Conference on Shafer, Inc.'s Complaint and yet failed to appear in this matter any interest PCA may have by virtue of a mortgage on the property in controversy is extinguished by virtue of its default. The court accordingly enters a judgment by default against PCA pursuant to Fed.R. Civ.P. 55(b) and (e) in conjunction with this Order. It is

SO ORDERED.

---

**3.** The court expresses no opinion as to whether the Shafers individually may be liable on the mortgage.